Filed 5/10/24  P. v. Payne CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>RANDY LYNN PAYNE,<br><br>    Defendant and Appellant. | F085863 & F085865<br><br>(Super. Ct. Nos. SUF20408 & SUF20409)<br><br>**OPINION** |

-ooOoo-

APPEALS from a judgment of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Three Strikes Project, Stanford Law School and Michael S. Romano for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Randy Lynn Payne (defendant) is serving a prison term of 25 years to life imposed under the original version of California's "Three Strikes" law (Pen. Code, §§ 667, subds. (b)–(j), 1170.12).  (Undesignated statutory references are to the Penal Code.)  The

qualifying offenses were petty theft with prior theft convictions (felony petty theft) and attempting to elude police while operating a vehicle with willful or wanton disregard for the safety of people or property (felony evading). Defendant has repeatedly sought to be resentenced based on changes in the law, but with little success.

This appeal arises from long-delayed proceedings under the Safe Neighborhoods and Schools Act of 2014 (Proposition 47), but it concerns the denial of relief under the Three Strikes Reform Act of 2012 (Proposition 36) and section 1385, subdivision (a). Defendant was eligible for Proposition 47 resentencing as to his felony petty theft conviction, and he was in fact resentenced as a misdemeanant for that crime. Felony evading is not a Proposition 47-eligible offense, but the proceedings allowed the trial court to reconsider its prior denials of a *Romero* motion (see *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*)) and a petition for resentencing under Proposition 36.

The trial court found it "would pose an unreasonable risk of danger to public safety" to grant relief pursuant to Proposition 36. (§ 1170.126, subd. (f).) Defendant's renewed *Romero* motion was denied for the same reason, with the additional finding that defendant "does not fall outside the … spirit [of the Three Strikes law]." After receiving the trial court's ruling, the defense changed its position and argued that determinate sentencing for the felony evading offense was *mandatory* in conjunction with the Proposition 47 resentencing. The argument was rejected.

Now, on appeal, defendant continues to argue that determinate sentencing was mandatory. In the alternative, he claims (1) the trial court abused its discretion and (2) his life sentence is cruel and unusual punishment. Finding no reversible error, we affirm the judgment.

## JUDICIAL NOTICE OF PRIOR APPEALS

We have previously granted requests by defendant and the People to take judicial notice of our records in defendant's earlier appeals. The parties did not request judicial

2.

notice in the current appeal, but their briefs cite to our unpublished opinions in those prior appeals. On the court's own motion, judicial notice is hereby taken of our records and opinions in *People v. Payne*, case Nos. F026894, F067838, F071909, and F079012. (Evid. Code, §§ 452, subd. (d), 459; see, e.g., *In re Nelson* (2020) 56 Cal.App.5th 114, 119, fn. 2; *Estate of Dito* (2011) 198 Cal.App.4th 791, 795, fn. 3; *Mayer v. C.W. Driver* (2002) 98 Cal.App.4th 48, 61.)

## FACTUAL, LEGAL, AND PROCEDURAL BACKGROUND

"What is commonly referred to as the Three Strikes law 'consists of two, nearly identical statutory schemes': the first enacted by the Legislature in March 1994 [citation], and the second enacted by ballot initiative in November 1994 [citation]." (*People v. Valencia* (2017) 3 Cal.5th 347, 378, fn. 1 (conc. opn. of Kruger, J.).) As originally conceived, the law "required that a defendant who had two or more prior convictions of violent or serious felonies receive a third strike sentence of a minimum of 25 years to life for any current felony conviction, even if the current offense was neither serious nor violent." (*People v. Johnson* (2015) 61 Cal.4th 674, 680.) Such defendants were presumed incorrigible and thus deserving of "'longer prison sentences and greater punishment.'" (*People v. Sasser* (2015) 61 Cal.4th 1, 11; see *People v. Vargas* (2014) 59 Cal.4th 635, 638.)

Defendant, now age 60, has an extensive criminal record. By the time the Three Strikes law was enacted in 1994, he had already suffered three qualifying felony convictions. Defendant also has a history of substance abuse.

In February 1996, at the age of 32, defendant stole motor oil from a gas station in Merced. He fled in a stolen car and attempted to evade a pursuing California Highway Patrol officer on Highway 99. After reaching speeds of over 100 miles per hour, defendant lost control of the vehicle and crashed into a stationary object. The incident resulted in criminal charges, a jury trial, and convictions of felony evading (Veh. Code, §§ 2800.1, 2800.2) and felony petty theft (Pen. Code, former § 666.)

3.

In September 1996, defendant was sentenced as a third strike offender. The trial court imposed concurrent prison terms of 25 years to life. A defense motion to dismiss the Three Strikes allegation and/or punish the crimes as misdemeanors was denied. This court later ordered the punishment for felony petty theft stayed (§ 654), but the judgment was otherwise affirmed. (*People v. Payne* (May 26, 1998, F026894) [nonpub. opn.] (*Payne I*).)

In November 2012, by enactment of Proposition 36, section 1170.126 created a resentencing process for third strike offenders serving life terms for nonserious and nonviolent felony convictions. An eligible petitioner "shall be resentenced [as a second strike offender] unless the [sentencing] court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising its discretion, "the court may consider: [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety." (§ 1170.126, subd. (g).)

In December 2012, defendant petitioned the trial court for resentencing under Proposition 36. Because the original trial judge had retired, the matter was assigned to the Honorable Mark V. Bacciarini. Although defendant was eligible for relief under section 1170.126, subdivision (b), resentencing was found to pose an unreasonable risk of danger to public safety. Judge Bacciarini cited, inter alia, the fact defendant had been clinically diagnosed with a mood disorder "that leaves [him] with a 'fluctuating ability to cope,'" as well as a substance abuse problem. Other factors included defendant's disciplinary issues while incarcerated.

4.

In November 2014, California voters enacted Proposition 47. A few weeks later, on December 17, 2014, this court affirmed the trial court's denial of relief under Proposition 36. (*People v. Payne* (2014) 232 Cal.App.4th 579, 584 (*Payne II*).) The *Payne II* appeal did not involve any issues regarding Proposition 47.

"Proposition 47 reclassified as misdemeanors certain drug- and theft-related offenses that previously were felonies or wobblers." (*People v. Valencia*, *supra*, 3 Cal.5th at p. 355.) A wobbler is an offense punishable as a misdemeanor or a felony at the discretion of the sentencing court. (§ 17, subd. (b); *People v. Park* (2013) 56 Cal.4th 782, 789.) Both of defendant's 1996 convictions were wobblers, but only felony petty theft has been reclassified as a misdemeanor by Proposition 47. (§ 1170.18, subd. (a).)

"Proposition 47 also added a provision allowing felony offenders 'serving a sentence for a conviction' for offenses now reclassified as misdemeanors to petition to have their sentences recalled and to be resentenced." (*People v. Valencia*, *supra*, 3 Cal.5th at p. 355.) "Like Proposition 36, Proposition 47 gave resentencing courts discretion to decline to impose a lesser sentence if resentencing 'would result in an unreasonable risk of danger to public safety.'" (*Id.* at p. 351.) However, a trial court's discretion to deny resentencing is more limited under Proposition 47 than under Proposition 36.[1]

In March 2015, defendant petitioned the trial court for a writ of habeas corpus based on Proposition 47. Defendant drafted and filed the petition himself. He later

---

[1]A trial court's discretion to deny resentencing for a Proposition 47-eligible conviction is circumscribed by section 1170.18, subdivision (c), which defines "unreasonable risk of danger to public safety" as "an unreasonable risk that the petitioner will commit a new violent felony" described in section 667, subdivision (e)(2)(C)(iv). Commonly known as "super strikes," those felonies consist of rape, sexual abuse of minors, homicide offenses, possessing a weapon of mass destruction, and all other serious or violent felonies punishable by life imprisonment or death. (§ 667, subd. (e)(2)(C)(iv)(I—VIII); *People v. Jefferson* (2016) 1 Cal.App.5th 235, 242.) In 2017, the California Supreme Court held that Proposition 47's narrow definition of dangerousness does not apply to resentencing proceedings under Proposition 36. (*People v. Valencia*, *supra*, 3 Cal.5th at p. 377.)

drafted and filed a motion for reconsideration of his 1996 *Romero* motion. A hearing took place in May 2015, with a deputy public defender appearing on defendant's behalf. Judge Bacciarini denied the motion for reconsideration, stating, "I don't believe I have any jurisdiction to recall or reconsider that sentence." The judge noted defendant's eligibility for partial relief under Proposition 47 but declined to take further action "until the proper petition is before me." Defendant filed a notice of appeal, but he dismissed the appeal before any briefing was submitted.

In January 2018, defendant filed another pro se petition for a writ of habeas corpus based on Proposition 47. The trial court set a hearing date and appointed counsel to represent defendant. The hearing was continued several times at defense counsel's request. Finally, in September 2018, defense counsel filed a petition for relief based on Proposition 47 and pursuant to *Romero*, and for reconsideration of the previous denial of relief under Proposition 36.

By early 2019, defendant's petition was still pending and he had become dissatisfied with his appointed counsel's representation. Defendant was eventually allowed to argue the petition himself, and he did so with only minimal success. The trial court ordered the felony petty theft conviction "amended to a misdemeanor," but all other relief was denied. In other words, the life sentence for felony evading was left unchanged. Defendant appealed the ruling.

In September 2019, while his fourth appeal was pending, defendant appeared before the Board of Parole Hearings (parole board) for an initial parole consideration hearing. The parole board found defendant posed an unreasonable risk to public safety and was therefore unsuitable for parole at that time. (Cal. Code of Regs., tit. 15, § 2281, subd. (a).) Parole was denied for a minimum of three years. (§ 3041.5, subd. (b)(3)(C).)

In *People v. Payne* (Sept. 21, 2021, F079012) [nonpub. opn.] (*Payne IV*), defendant alleged his waiver of counsel during the Proposition 47 proceedings was invalid under *Faretta v. California* (1975) 422 U.S. 806. This court accepted the

6.

People's concession of reversible error and remanded the cause for further proceedings. The remittitur issued in November 2021.

On remand, defendant was represented by Stanford Law School's Three Strikes Project. The Three Strikes Project is a collective of law professors, staff attorneys, and law students who advocate for criminal law reform and provide pro bono legal services for defendants sentenced under the Three Strikes law. (See <https://law.stanford.edu/three-strikes-project/#slsnav-litigation-reform-education> [as of May 9, 2024], archived at <https://perma.cc/E3RZ-J44Z>.) The Three Strikes Project continues to represent defendant in this appeal.

In May 2022, defendant filed a document entitled "Petition For Resentencing Pursuant To Proposition 47 and *People v. Buycks* [(2018) 5 Cal.5th 857]." (Some capitalization omitted.) Relying on *Buycks* and language in this court's *Payne IV* opinion, defendant sought reconsideration of his previously denied *Romero* motion. (See *Buycks*, at p. 893 [noting "the Courts of Appeal have concluded that, under the recall provisions of [Proposition 47], the resentencing court has jurisdiction to modify *every* aspect of the sentence, and not just the portion subjected to the recall"].) The petition did not discuss or reference Proposition 36.

Defendant's petition noted his "participation in prison rehabilitation and vocational programming." With exception of a fighting incident in 2004, defendant had been a nonviolent inmate. His record of disciplinary issues had been relatively minimal since 2017, showing marked improvement from a spate of substance abuse violations in 2016.

The petition further alleged defendant "walks with a cane and … also suffers from a seizure disorder which further limits his physical capabilities. [Citation.] Other physical infirmities include hepatitis C, hypertension, kidney stones, and liver fibrosis." The petition cited to exhibits providing support for these allegations, but the exhibits are

7.

not part of the record on appeal. The defense later provided, in a supplemental filing with the trial court, evidence defendant has also been diagnosed with cirrhosis.

On May 25, 2022, the People filed an opposition to defendant's petition. The opposition was supported by multiple exhibits, including a 108-page transcript from defendant's September 2019 parole suitability hearing. Another exhibit showed the parole board had denied, in May 2020, a petition filed by defendant to advance the date of his next parole suitability hearing. The latter document summarized the parole board's reasons for having denied parole in 2019: "(1) inmate's recent history of serious misconduct in prison involving substance abuse; (2) inmate's recent prison behavior indicative of a lack of impulse control; (3) a lack of relevant self-help programming and; (4) inmate's Relapse Prevention Plan [did] not adequately address substance abuse issues."

On May 31, 2022, the hearing on defendant's resentencing petition was continued by mutual agreement of counsel. The record indicates this occurred in light of the possibility defendant might soon be paroled. A second parole suitability hearing was reportedly scheduled for August 25, 2022.

In July 2022, the People filed a supplemental opposition brief with an additional exhibit. The exhibit was a "Comprehensive Risk Assessment" prepared for the parole board the previous month by forensic psychologist Steven Arkowitz, Psy.D. Included in Dr. Arkowitz's report was the following summary of defendant's history of disciplinary issues in prison:

> "[Defendant] has received approximately 22 Rule Violation Reports (RVRs). These have included (though not limited to) the following infractions: mutual combat (2004), possession of a hypodermic syringe (2008), and possession of inmate manufactured alcohol (2012). Of note, in 2016 he received approximately 12 RVRs for use of a controlled substance (morphine). Most recently, he received RVRs for refusing to accept assigned housing in April and May of 2022. In addition, he has received many administrative and counseling-only RVRs, most recently in 2019.… [¶] … [¶] In terms of his May 2022 RVR for refusing to accept assigned

8.

housing, [defendant] stated that his mental health and medical diagnoses do not allow for him to be housed in a dorm. He said he felt discriminated against due to his disability but staff members are now assisting him."

The record on appeal does not expressly disclose what happened at defendant's second parole suitability hearing. However, given the arguments in his appellate briefing and the fact the proofs of service show he is still incarcerated, it appears defendant was denied parole a second time.

Defendant's resentencing petition was heard on September 30, 2022. During the hearing, the defense proffered expert testimony from a former California Department of Corrections and Rehabilitation (CDCR) official, Richard Subia. The witness opined that defendant "does not pose an unreasonable risk of danger to public safety." Following the expert testimony and argument by counsel, the matter was taken under submission.

In December 2022, the trial court issued a 10-page ruling. Relief was granted under Proposition 47 as to the only Proposition 47-eligible offense: felony petty theft. The trial court found defendant "does not pose an unreasonable risk of danger to public safety" under Proposition 47's narrow definition of dangerousness. (See fn. 1, *ante*.) Accordingly, the felony petty theft conviction was redesignated as a misdemeanor.

As for defendant's felony evading conviction, the trial court reconsidered its prior denial of relief under Proposition 36. It again found that resentencing defendant as a second strike offender "*would* pose an unreasonable risk of danger to public safety" (italics added) under the broader discretion conferred by section 1170.126, subdivision (g). The following explanation was provided:

> "Since the 2013 ruling denying relief [under Proposition 36], [defendant] has continued to engage in the same concerning pattern of behavior and has not sufficiently availed himself of opportunities to program. This is compounded by his well-established drug problem, lack of impulse control, and lack of insight into the dangerousness of his past behavior.

> "[Defendant] continued to struggle with impulse control and drug addiction after the court's 2013 ruling. In 2016, [defendant] tested positive for morphine over 10 times in a controlled institutional setting. In 2017, he

9.

was given counseling for refusing to submit to a drug test. To his credit, it appears [defendant] has maintained sobriety since 2017.

"Though not for testing positive for narcotics, [defendant] has continued to violate other rules and has received multiple rule violations reports (RVRs). In 2017, he received a counseling RVR for disobeying an order. Three times between 2018 and 2019, [defendant] was absent from his work assignment. He received two counseling and one administrative RVRs as a result. In 2019, he received another counseling RVR. Finally, in 2022, he received RVRs for refusing to accept assigned housing in April and May.

"It appears [defendant] has engaged in some programming, though inconsistently. His records indicate he has refused to complete assigned packets. In April and May 2022, around the same time he was refusing a housing change, he also refused to complete the Remote Programming Engagement Packet Homework as part of Integrated Substance Use Disorder Treatment (ISUDT). [Defendant] claims he was unable to complete the packets due to his dyslexia but fails to mention what efforts, if any, he made to get assistance or accommodations to complete his assignments.

"[Defendant] was interviewed by Dr. Steven Arkowitz for the preparation of his 2022 Comprehensive Risk Assessment (CRA). It is apparent in the report that [defendant] has not developed concrete strategies for how he will handle challenges, temptations, and stressors if released.

"This court agrees with Dr. Arkowitz['s] assessment that, '[b]ased on his lengthy history of noncompliance, his response to supervision continues to be highly relevant to his risk of violence.' The court also agrees with Dr. Arkowitz in that [defendant] tended to minimize and provide somewhat superficial explanations for some of his poor criminal and/or rule-breaking behavior. The court also observed this tendency in [defendant]'s 2019 parole hearing.

"The court agrees with Dr. Arkowitz's assessment that [defendant] 'will likely experience significant stressors when released. He will likely be exposed to drugs; antisocial individuals; and challenging interpersonal situations. He displayed a minimal understanding of these potential difficulties.' [Defendant] has struggled with narcotics, impulse control, and following rules or orders that he disliked in an institutionalized setting. The court has little confidence [defendant] will be able to properly manage these issues if released; he lacks insight and lacks the concrete tools/skills needed due to refusing to properly engage in programming designed to assist him.

As such, [defendant] continues to pose an unreasonable risk to public safety.

"The court considered Mr. Subia's testimony and written report in coming to its decision. The court did not find Mr. Subia's testimony and report to be helpful to [defendant]. Mr. Subia's testimony and report reiterated information otherwise in the record. Mr. Subia simply came to a different conclusion. The court disagrees with Mr. Subia's conclusion.

"The court has no doubt that [defendant] is sincere in his desire to change and be released. However, [defendant] needs to put action behind his desires and demonstrate consistent behavior. [Defendant] needs to work on self-help programming, gain insight to his triggers, and make concrete plans to handle difficult situations and control his impulses. [Defendant] plans to reintegrate into society by staying and receiving services through Options Recovery Services. However, [defendant] needs to demonstrate he can comply with services in prison before the court can have confidence [defendant] will comply with services outside of prison.

"[Defendant] does have several medical conditions, such as cirrhosis of the liver, epilepsy, and mobility issues. However, his medical conditions do not impact his ability to be violent and dangerous. [Defendant] could still easily engage in reckless and dangerous activities similar to the ones that led to this commitment offense."

The trial court also denied the *Romero* motion. The ruling briefly explains: "[Defendant] is an unreasonable risk of danger to public safety, and thus it is not in the interest of justice to grant relief. Further, [defendant]'s criminal history and institutional record demonstrate that [defendant] does not fall outside the scheme's spirit."

On January 17, 2023, the defense filed a sentencing memorandum concerning defendant's resentencing under Proposition 47. However, contrary to all prior submissions, the defense now argued that relief under Proposition 47 as to the petty theft conviction somehow triggered automatic relief as to the felony evading conviction. The trial court rejected this argument, and defendant appealed.

11.

**DISCUSSION**

## I.     Automatic Resentencing Claims

### A.     *Buycks* Argument

Defendant claims entitlement to determinate sentencing on the felony evasion offense based on the "full resentencing rule" discussed in *People v. Buycks*, *supra*, 5 Cal.5th 857.  The quoted term was used in *Buycks* to describe the following principle: "[W]hen part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.'" (*Buycks*, at p. 893.)  It was noted the full resentencing rule has "been applied to recall and resentencing provisions enacted by Proposition 36," and that "several Courts of Appeal have upheld the modification of every aspect of a defendant's sentence by a resentencing court following a successful petition to recall only part of that sentence under Proposition 47." (*Ibid.*)

In the post-*Buycks* case of *People v. Hubbard* (2018) 27 Cal.App.5th 9, the appellant was serving a life term under the original Three Strikes law for two felony convictions; one was a serious felony (attempted robbery), but the other was neither serious nor violent (felony evading). (*Hubbard*, at p. 11.)  The *Hubbard* appellant was thus eligible for Proposition 36 resentencing on only one of his two commitment offenses, which was of little practical benefit to him.  However, the Third Appellate District held the trial court had jurisdiction to also consider a renewed *Romero* motion in conjunction with the Proposition 36 proceedings. (*Hubbard*, at pp. 12–13.)

In *Payne IV*, this court discussed *Buycks* and *Hubbard* and generally concluded, under the same rationale, defendant could seek reconsideration of his previously denied *Romero* motion and Proposition 36 petition in conjunction with resentencing under Proposition 47.  We cited *People v. Valenzuela* (2019) 7 Cal.5th 415 for the proposition "the full resentencing rule allows a court to revisit all prior sentencing decisions when

12.

resentencing a defendant." (*Valenzuela*, at pp. 424–425.) The *Payne IV* opinion did not suggest or contemplate that relief under Proposition 36 would be automatic.

Proposition 36 allows "persons presently serving an indeterminate term of imprisonment" under the former Three Strikes law to petition for resentencing as a second strike offender. (§ 1170.126, subds. (a), (f).) As discussed, "Proposition 36 did not make resentencing automatic; its provisions directed the trial court to evaluate whether early release would pose 'an "unreasonable risk of danger to public safety"'" based on the defendant's criminal history and other factors." (*People v. Gentile* (2020) 10 Cal.5th 830, 852.) Defendant argues section 1170.126 does not apply to him because he was not "presently serving" a Three Strikes sentence during the proceedings on remand. He contends the granting of relief under Proposition 47 as to the petty theft conviction meant his "entire sentence was vacated and he was required to be sentenced anew" under the current version of the Three Strikes law. Because felony evading is not punishable by a life term under the current version of the Three Strikes law, defendant claims his "life sentence must be reversed."

Defendant's novel argument is not supported by the cases upon which he relies. He selectively quotes from *Buycks* for the sweeping proposition "that when resentencing a defendant, a trial court 'must' apply the law in effect 'at that time.'" What *Buycks* actually says is this:

> "[A]t the time of resentencing of a Proposition 47 eligible felony conviction, the trial court must reevaluate the applicability of any enhancement within the same judgment *at that time*, so long as that enhancement was predicated on a felony conviction now reduced to a misdemeanor. Such an enhancement cannot be imposed because at that point the reduced conviction 'shall be considered a misdemeanor for all purposes.' (§ 1170.18, subd. (k).) Under these limited circumstances, a defendant may also challenge any prison prior enhancement in that judgment if the underlying felony has been reduced to a misdemeanor under Proposition 47, notwithstanding the finality of that judgment." (*People v. Buycks*, *supra*, 5 Cal.5th at p. 894.)

13.

Court opinions are not authority for propositions not considered therein. (*People v. Gray* (2023) 15 Cal.5th 152, 169, fn. 5.) The *Buycks* opinion merely holds "a person may petition for recall of his or her current sentence under [Proposition 47], upon which the trial court, when it resentences on the eligible felony conviction, must also resentence the defendant generally and must therefore reevaluate the continued applicability of any enhancement based on a prior felony conviction." (*People v. Buycks*, *supra*, 5 Cal.5th at p. 894.) Incidentally, the imposition of a life term under the Three Strikes law is not an enhancement; it is an alternative penalty. (*Romero*, *supra*, 13 Cal.4th at p. 527; *People v. Burke* (2023) 89 Cal.App.5th 237, 243–244.)

The other cases cited in defendant's briefing are similarly inapposite. (E.g., *People v. Valenzuela*, *supra*, 7 Cal.5th 415; *People v. Salgado* (2022) 82 Cal.App.5th 376; *People v. Walker* (2021) 67 Cal.App.5th 198.) *Valenzuela* and *Walker* dealt with whether redesignation of a felony conviction to a misdemeanor under Proposition 47 necessarily invalidated the appellants' other convictions or enhancements. (*Valenzuela*, at pp. 418–419; *Walker*, at pp. 203–204.) Here, the redesignation of defendant's petty theft conviction to a misdemeanor did not invalidate or otherwise affect his felony evading conviction.

The *Salgado* case arose from a discretionary recall of sentence and resentencing under former section 1170, subdivision (d), which has since been renumbered as section 1172.1. (*People v. Salgado*, *supra*, 82 Cal.App.5th at p. 378.) The statute provides "an exception to the common law rule that the court loses resentencing jurisdiction once execution of sentence has begun." (*Dix v. Superior Court* (1991) 53 Cal.3d 442, 455 [discussing former § 1170, subd. (d)].) The issues in *Salgado* concerned retroactivity of Assembly Bill No. 333 (2021–2022 Reg. Sess.). The opinion does not discuss Proposition 36 or the Three Strikes law.

Defendant argues *Salgado* "held that when a sentence is recalled, the trial court 'must apply all changes in law that reduce sentences … in effect at the time of the

14.

[re]sentencing hearing.'"  Again, context is key.  In the cited portion of *Salgado*, the appellate court was merely reciting the language of the applicable statute.  (*People v. Salgado*, *supra*, 82 Cal.App.5th at p. 381, quoting § 1172.1, subd. (a)(2).)  We do not view *Salgado* as supportive of defendant's position regarding Proposition 36.

The Attorney General relies on *People v. Conley* (2016) 63 Cal.4th 646.  The issue in *Conley* was whether defendants sentenced to life terms under the former Three Strikes law but whose judgments were not final when Proposition 36 was enacted were entitled to automatic relief under the new law.  (*Conley*, at pp. 655–656.)  The California Supreme Court held they were not.  In reaching its conclusion, the court noted that while Proposition 36 "reduce[d] previously prescribed criminal penalties," it "also establish[ed] a new set of disqualifying factors that preclude a third strike defendant from receiving a second strike sentence." (*Conley*, at p. 659.)  "The recall procedures in … section 1170.126 were designed to strike a balance between these objectives of mitigating punishment and protecting public safety…." (*Id*. at p. 658.)  The court was unwilling to construe Proposition 36 in a way that would allow defendants sentenced under the former Three Strikes law to circumvent the parts of Proposition 36 that were designed to screen out dangerous offenders.  (*Id*. at pp. 659–660.)

Although *Conley* is not directly on point, we agree it is the most analogous and instructive authority among those cited in the parties' briefing.  "Proposition 36 made resentencing contingent on a court's evaluation of a defendant's dangerousness." (*People v. Martinez* (2019) 31 Cal.App.5th 719, 726, citing *People v. Conley*, *supra*, 63 Cal.4th at pp. 658–659.)  "There can be no doubt that [Proposition 36] was motivated in large measure by a determination that sentences under the prior version of the Three Strikes law were excessive.  … But voters were motivated by other purposes as well, including the protection of public safety." (*Conley*, at p. 658.)

The remand proceedings in this case occurred in the context of Proposition 47 resentencing.  Proposition 47 and Proposition 36 were aimed at "two very different

15.

populations of offenders." (*People v. Valencia*, *supra*, 3 Cal.5th at p. 376.) "[T]he two groups are not similarly situated for purposes of resentencing because one group consists of recidivist serious or violent offenders, who may have the propensity to commit serious or violent felony crimes[,] and the other generally consists of low-level offenders." (*Ibid.*)

Furthermore, the California Supreme Court has already determined that Proposition 47 did not amend Proposition 36. (*People v. Valencia*, *supra*, 3 Cal.5th at pp. 351–352.) Citing uncodified provisions of Proposition 47 and parts of the voter guide, the court observed that "neither the initiative's text nor its supporting materials describe any intention to amend the criteria for the resentencing of recidivist serious or violent felons." (*Valencia*, at p. 357.) Defendant fails to persuade us that, by virtue of obtaining relief under Proposition 47 for one commitment offense, he is entitled to bypass the public safety provisions of Proposition 36 and secure further, automatic sentencing relief for a separate conviction that is outside the scope of Proposition 47.

## B.      Equal Protection Claim

In the final section of his opening brief, defendant argues his sentence "violates the Equal Protection Clause because similarly situated defendants have a right to have their sentences reevaluated under new law—Penal Code section 1172.75—but [he] does not." Defendant barely explains the subject matter of section 1172.75 before pivoting to a short discussion of *People v. Hardin* (2022) 84 Cal.App.5th 273, which has since been overruled by the California Supreme Court (*People v. Hardin* (2024) 15 Cal.5th 834, 866). The *Hardin* discussion is followed by a conclusory, single-sentence paragraph that reads:

> "Because there can be no rational justification to differentiate [defendant] from a similarly situated defendant who has a new sentencing opportunity because he or she received an additional enhancement under section 667.5(b), [defendant] must also be entitled the benefit of section 1172.75 and a chance to reevaluate his current sentence."

16.

Section 1172.75 concerns prior prison term enhancements. "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense … is legally invalid." (§ 1172.75, subd. (a).) The statute requires the CDCR to "identify those persons in [its] custody currently serving a term for a judgment that includes an enhancement described in subdivision (a)" and provide the information to the appropriate sentencing court. (*Id*., subd. (b).) The sentencing court, in turn, "shall recall the sentence and resentence the defendant." (*Id*., subd. (c).)

"The party raising an equal protection challenge has the burden of establishing unconstitutionality." (*Doe v. California Dept. of Justice* (2009) 173 Cal.App.4th 1095, 1111.) Defendant's equal protection claim is insufficiently developed in the opening brief and not even mentioned in his reply brief. Nor was it mentioned during oral argument. As presented, the claim makes little sense. Defendant alleges the deprivation of an equal "opportunity for reevaluation of [his] entire sentence" and "opportunity for a new sentence and possible release." But defendant *was* afforded those very opportunities in the proceedings on remand. He falls well short of meeting his appellate burden.[2]

---

[2] It is possible defendant is alluding to section 1172.75, subdivision (d)(2), under which the resentencing court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." The Three Strikes Project participated as an amicus curiae in *People v. Superior Court* (*Guevara*) (2023) 97 Cal.App.5th 978, review granted March 12, 2024, S283305, where the issue was whether section 1172.75 entitles third strike offenders with prior prison term enhancements to automatic resentencing under Proposition 36 even if they were previously denied relief under section 1170.126 based on findings of dangerousness. The majority decision in *Guevara* holds such automatic relief is not compelled by section 1172.75, and that such a construction of the statute would amount to an unconstitutional amendment of Proposition 36. (*Guevara*, at pp. 984–987.) To date, all published cases on the subject have agreed with the *Guevara* majority. (*People v. Santos* (2024) 100 Cal.App.5th 666; *People v. Kimble* (2024) 99 Cal.App.5th 746, rev. granted Apr. 24, 2024, S284259.) Here, defendant does *not* argue that section 1172.75 entitles similarly situated third strike offenders to automatic resentencing in circumvention of section 1170.126. He merely contends such individuals have "an opportunity for a new sentence and possible release [from prison]." It is therefore unnecessary for us to take a position on the issue presented in *Guevara*.

17.

**II.    *Romero* Claim**

Defendant alternatively claims the trial court erred by denying his *Romero* motion. Rather than addressing the trial court's stated reasons for its ruling, defendant argues his case "is materially indistinguishable from" *People v. Dryden* (2021) 60 Cal.App.5th 1007, where an appellate court reversed the denial of a *Romero* motion for abuse of discretion. Given the limited scope of defendant's argument, our analysis will focus on the differences between this case and *Dryden*.

**A.    Additional Background**

Defendant's briefing describes his commitment offenses as "shoplifting a can of motor oil from a gas station and speeding away from arresting officers." The statement is both inaccurate and unduly minimizing of the underlying incident. This is somewhat ironic considering one of the trial court's reasons for denying the renewed *Romero* motion was defendant's "lack of insight into the dangerousness of his past behavior."

Defendant stole 36 cans of motor oil from a gas station (three cases, each containing 12 cans). He fled in a Toyota Camry after two employees "rushed outside to confront [him]" and "started banging on the side of the car and yelling at [him] to stop." (*Payne I*, *supra*, F026894.) What happened next is detailed in the *Payne I* opinion:

> "At approximately 10:02 a.m., California Highway Patrol (CHP) Officer Paul Speers received a radio dispatch reporting a gold Toyota Camry being driven in a reckless manner northbound on Highway 99. Officer Speers was driving a marked patrol vehicle equipped with red and blue overhead lights. Officer Speers stopped along the highway and positioned his car to watch northbound traffic. At approximately 10:04 a.m., he saw a gold Toyota Camry traveling approximately 70 miles per hour in a 55-mile-per-hour zone.
>
> "Defendant, who was driving the Camry, was the only person Officer Speers could see in the car. Defendant looked directly at Officer Speers as he passed him. Officer Speers pulled behind defendant, and

---

(See *People v. Abarca* (2016) 2 Cal.App.5th 475, 480 ["'An appellate court is not required to examine undeveloped claims, nor to make arguments for parties'"].)

18.

defendant immediately accelerated. Officer Speers activated his vehicle's overhead lights and turned on the siren.

"Defendant continued to drive. For several hundred yards, the Camry traveled with two wheels on the center divider and two wheels in the number one lane. He later crossed the roadway and drove onto the shoulder. Other vehicles moved out of the way to avoid collisions with defendant. At times, defendant drove at speeds well over 100 miles per hour. Despite the fact Officer Speers was wearing his CHP uniform and pursued defendant in a marked CHP car with flashing lights and siren, defendant did not stop. [¶] As defendant approached the city limits of Livingston, he drove onto the shoulder to attempt to drive around stopped traffic at the red traffic light. Defendant lost control of the car, flipped over and struck a power pole." (*People v. Payne I*, *supra*, F026894).)

The *Payne I* opinion further explains some of the reasons why defendant's original *Romero* motion was denied in 1996:

"[The trial court] noted the seriousness of defendant's attempt to evade arrest. While the officer was attempting to stop defendant, he himself was afraid of having an accident. Defendant passed a number of cars while speeding on the freeway, on the shoulder and on the divider, resulting in the car rolling and hitting a pole. At times, defendant was driving at 110 miles per hour. The car was demolished. The court opined defendant was very fortunate nobody was killed.

"Defendant was 33 at the time of sentencing. He has a criminal record dating back to 1982 when he was 19 years old. In his probation report, defendant admits a drug problem and contends the drug problem is the reason for his criminal activity. In 1982, defendant was convicted of attempted burglary and taking a vehicle without the owner's consent. In 1983, he was convicted of burglary, second degree burglary, fighting in public, and carrying a concealed weapon. In 1984, he was convicted of burglary. In 1985 he was convicted of two counts of petty theft with a prior. In 1986, defendant was again convicted of petty theft with a prior, and, in 1988, of receiving stolen property. In 1989, he was convicted of burglary. In 1991, he was convicted of burglary and robbery. In 1992 and 1994, defendant sustained three burglary convictions." (*Payne I*, *supra*, F026894.)

## B.    Legal Overview

California's Three Strikes law was designed to restrict the discretion of trial courts when punishing recidivist offenders "'to ensure longer prison sentences and greater

punishment for those who commit a felony and have been previously convicted of one or more serious and/or violent felony offenses.'" (*People v. Sasser*, *supra*, 61 Cal.4th at p. 11, quoting § 667, subd. (b).)  However, as recognized in *Romero*, section 1385 authorizes trial courts to strike prior conviction allegations in cases brought under the Three Strikes law if it will further the interests of justice.  (§ 1385, subd. (a); *Romero*, *supra*, 13 Cal.4th at pp. 529–530.)  A request for such relief is commonly known as a *Romero* motion.  The granting or denial of a *Romero* motion is reviewed for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 375.)

Like other sentencing schemes based on recidivism, the basic premise of the Three Strikes law is "'that the defendant's current criminal conduct is more serious because he or she previously was found to have committed criminal conduct and did not thereafter reform.'" (*People v. Vargas*, *supra*, 59 Cal.4th at p. 638.)  When ruling on a *Romero* motion, the sentencing court "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

"A prior strike conviction is not considered 'remote' for the purposes of mitigation where the defendant has not demonstrated a prolonged period of rehabilitation … in the interim." (*People v. Vasquez* (2021) 72 Cal.App.5th 374, 390.)  "In analyzing whether a defendant's prior criminal conduct was 'remote,' a trial court should consider whether the defendant 'was incarcerated a substantial part of the intervening time and thus had little or no opportunity to commit' additional crimes." (*Ibid*.)  Thus, in cases where a *Romero* motion is reconsidered after a lengthy period of incarceration, the defendant's custodial conduct will carry more weight than the mere passage of time in determining his future prospects.  (See *Vasquez*, at p. 390; *People v. Mayfield* (2020) 50 Cal.App.5th 1096, 1107

20.

["older strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways"].)

### C. The *Dryden* Case

In *People v. Dryden*, *supra*, 60 Cal.App.5th 1007, the Sixth Appellate District held that a trial court's "strict application of the Three Strikes law … resulted in a sentence so out of proportion to the offenses as to be an abuse of discretion." (*Id.* at p. 1013.) The appellant, James Dryden, was convicted of two counts of assault with a dangerous or deadly weapon. He had struck two teenaged victims with a "hollow bamboo stick" (*id.* at p. 1028) during "a late-night, spontaneous altercation" at a fast-food restaurant (*id.*, at p. 1031). Dryden was "51 years old, homeless, and intoxicated" at the time of the offenses. (*Id.* at p. 1013.)

The subject incident occurred in October 2013. (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1013.) Dryden had already suffered three prior strikes: "a 1989 conviction for residential burglary [citation]; a 2005 conviction for assault with a deadly weapon [citation]; and a 2007 conviction for residential burglary." (*Id.* at p. 1030.) After declining to reduce the current offenses to misdemeanors and denying a *Romero* motion, the trial court imposed the Three Strikes penalty of 25 years to life consecutive to a determinate prison term of 15 years. The determinate term was based on multiple enhancements. (*Ibid.*)

A forensic pathologist had testified at trial "that the bamboo stick was capable of inflicting great bodily injury or death." The expert "explained that although uncommon, a blow to the ear or neck area could lacerate or dissect the vertebral artery, causing death." The expert "considered [one of the victims] lucky given his neck injury because it 'only take[s] one blow at the wrong angle' or with the 'head being turned that can cause a devastating injury, which can ultimately lead to death.'" (*People v. Dryden*, *supra*, 60 Cal.App.5th at pp. 1015–1016.) The trial court relied on this testimony at sentencing, observing the incident "'could have been very serious if the stick, bamboo

stick or cane, as it was being used, had hit in a slightly different area.'" (*Id*. at p. 1028.) "Perhaps most notably, the trial court considered whether punishment under the Three Strikes law would be disproportionate to the severity of the current offenses, stating '[t]hat might apply marginally,' but it concluded in denying the motion that a Three Strikes sentence would not be disproportionate to defendant's criminal history." (*Id*. at p. 1030.)

The appellate court disagreed with the trial court in terms of the seriousness of the current offenses. Focusing on the victims' actual injuries, the appellate court noted the defendant had "struck two members of a group of five young men with a bamboo stick, scratching one and raising a welt on the neck of the other." (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1031.) Despite evidence Dryden was the initial aggressor, the appellate court seemed to give weight to the fact that several people had stood their ground and fought back. The opinion notes one of the young men was a United States Marine. (*Id*. at p. 1014.)

The *Dryden* court was particularly troubled by how much prison time the Three Strikes penalty added to Dryden's determinate term in light of his age. "[T]he trial court elected to impose a sentence of 25 years to life consecutive to 15 years, de facto life imprisonment for [Dryden,] who was 53 years old when sentenced." (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1031.) "[H]ad the court struck two or all three of the prior strikes, [Dryden] still would have been exposed to a significant sentence." (*Id*. at p. 1030.)

The "most significant[]" factor in the appellate court's *Romero* analysis was the fact Dryden "had endured a violent and abusive upbringing, had been homeless since his midteens, and had a long history of alcoholism and mental illness, all of which contributed to his criminal conduct." (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1030.) Among other personal challenges, Dryden had been a victim of "sexual and physical abuse" and had previously suffered a "traumatic brain injury" to which

22.

psychologists attributed his "anger control issues and debilitated daily functioning." (*Id.* at pp. 1028–1030.)

### D. Analysis

Defendant's *Romero* claim is entirely based on the argument his case is "materially indistinguishable" from the *Dryden* case. The argument does not withstand scrutiny. In *Dryden*, the appellate court found "the trial court abused its discretion by denying [Dryden] any meaningful relief from the Three Strikes law." (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1032.) Given the emphasis on Dryden's age at sentencing (53 years old) and characterization of his sentence as "tantamount to life in prison" (*id.* at p. 1032), the phrase "meaningful relief from the Three Strikes law" basically translates to a meaningful opportunity for release from prison.

Here, the denial of defendant's *Romero* motion did not deprive him of a meaningful opportunity to be released from prison. When the ruling was made in December 2022, defendant was already eligible for parole. He had been denied parole in 2019, at age 56, for a period of three years. A second parole suitability hearing had either recently taken place or was about to be held when the renewed *Romero* motion was denied. Defendant remains eligible for parole now, at age 60. As such, the practical consequences of the trial court's ruling are not "materially indistinguishable" from those in *Dryden*. The consequences are objectively less severe. (See *People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1031 [denial of *Romero* motion meant "de facto life imprisonment for defendant who was 53 years old when sentenced"].)

Also "critical" to the *Dryden* court's analysis were Dryden's personal circumstances. His criminality was attributed to "a violent and abusive upbringing, [being] homeless since his midteens, and … a long history of alcoholism and mental illness." (*People v. Dryden*, *supra*, 60 Cal.App.5th at p. 1030.) Defendant's background does not include childhood abuse, homelessness, traumatic brain injury, or serious mental illness.

23.

When defendant sought reconsideration of his *Romero* motion in 2018, he told the trial court: "I lived in a large and loving family of 7 children under doting and exemplary parents. Out of all my siblings I was the only one to ever get into any kind of trouble. At the tender age of 17 I found myself experimenting with cocaine. It wasn't long before I was trapped in a culture and corruption by drug addiction."

More recently, defendant has alleged his father abused alcohol and was violent toward his mother while intoxicated. Nevertheless, defendant has maintained he was raised in a stable, middle-class household. Dr. Arkowitz's Comprehensive Risk Assessment states, based on an interview with defendant in May 2019, "[defendant] reported a 'wonderful' childhood, with the exception of his father's abusive behavior towards his mother. His family was financially secure … and he enjoyed a very close relationship with his mother." "Despite the efforts of his family to steer him down a more positive path, [defendant] ultimately chose a negative lifestyle characterized by criminal behavior, unhealthy relationships, unstable employment, and a serious substance abuse problem. Thus, by the time of the commitment offense, [defendant] had not only established an extensive criminal record with prior prison terms, he developed an entrenched antisocial and self-serving mindset that justified the use of criminal behavior to meet his needs and/or solve problems."

Defendant further contends his felony evading offense is "less serious compared to the defendant in *Dryden*." Reasonable minds could disagree. Dryden unwisely provoked five young men who were not afraid to fight back. Although Dryden landed a few blows with a hollow stick that eventually splintered into pieces, the appellate court did not view the incident as one involving significant violence or danger. (*People v. Dryden*, *supra*, 60 Cal.App.5th at pp. 1014–1015, 1031.) In defendant's case, both the trial court and the parole board have characterized the felony evading incident as dangerous and life-threatening. Innocent motorists had to quickly maneuver out of defendant's way to avoid a high-speed collision. At his parole suitability hearing in 2019, defendant did not

disagree when the presiding commissioner observed that he could have killed multiple people.

Lastly, in his reply brief, defendant alleges the trial court "disregarded" his "positive post-conviction factors and current [health problems]." The assertion ignores the trial court's 10-page ruling. The ruling commends defendant for having "maintained sobriety since 2017" and acknowledges he "does have several medical conditions, such as cirrhosis of the liver, epilepsy, and mobility issues." In the absence of evidence to the contrary, we must presume the trial court considered all factors relevant to the *Romero* analysis. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.) The weight given to those factors is part of the trial court's discretionary assessment.

It matters not how much an appellate court may disagree with a trial court's exercise of discretion, but whether other reasonable minds could have reached the same conclusion. (See *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 978; *People v. Ochoa* (2001) 26 Cal.4th 398, 437–438.) "Because the circumstances must be 'extraordinary … by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record …,' the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*People v. Carmony*, *supra*, 33 Cal.4th at p. 378.) Defendant has not met his burden to clearly show the denial of his *Romero* motion "'was irrational or arbitrary.'" (*Alvarez*, at p. 977.)

## III. Cruel and Unusual Punishment Claim

Defendant alternatively contends his life sentence violates the constitutional prohibition against cruel and unusual punishment. Similar to his *Romero* claim, defendant relies on a single case: *People v. Avila* (2020) 57 Cal.App.5th 1134. We reject the claim for multiple reasons.

"A claim a sentence is cruel and unusual is forfeited on appeal if it is not raised in the trial court, because the issue often requires a fact-bound inquiry." (*People v. Speight* (2014) 227 Cal.App.4th 1229, 1247; accord, *People v. Brewer* (2021) 65 Cal.App.5th 199, 212.) Appellate courts often address such claims on the merits, despite forfeiture, to forestall or dispose of a related ineffective assistance of counsel (IAC) claim. (E.g., *Brewer*, at p. 212; *People v. Baker* (2018) 20 Cal.App.5th 711, 720.) But defendant's appellate counsel represented him in the proceedings on remand, and IAC has not been alleged. If the defense intended to argue cruel and unusual punishment in this appeal, the issue needed to be raised with the trial court. It was not.

Defendant and his counsel appropriately refrained from alleging cruel and unusual punishment at resentencing since this court had already rejected the claim on two prior occasions. This is noted in the respondent's brief, and the Attorney General relies on the law of the case doctrine. "[W]hen an appellate court '"states in its opinion a principle or rule of law necessary to the decision, that principle or rule becomes the law of the case and must be adhered to throughout [the case's] subsequent progress, both in the lower court and upon subsequent appeal …."'" (*People v. Barragan* (2004) 32 Cal.4th 236, 246; see *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1217 [whether a sentence constitutes cruel and unusual punishment is a question of law].)

In his reply brief, defendant quotes from *Payne IV* to argue this court's "earlier ruling … [only] addressed whether [his] sentence was cruel and unusual 'under the Eighth Amendment to the federal constitution.'" Ignoring that the Eighth Amendment quotation was taken from his own briefing in *Payne IV*, defendant erroneously suggests this court has never addressed the legality of his Three Strikes sentence under the California Constitution. The appellate panel in *Payne I* unanimously rejected defendant's argument that his sentence "violated California and federal constitutional prohibitions against cruel and unusual punishment." (*Payne I*, *supra*, F026894.) The claim was analyzed using the factor test articulated in *In re Lynch* (1972) 8 Cal.3d 410, which is the

same framework under which the *Avila* case was decided.  (*People v. Avila*, *supra*, 57 Cal.App.5th at pp. 1145–1149.)

Although unnecessary, we further observe that *Avila* is distinguishable in several ways.  The *Avila* appellant was 47 years old when sentenced as a third strike offender to 25 years to life plus 14 years.  (*People v. Avila*, *supra*, 57 Cal.App.5th at pp. 1139, 1144.)  His prior strikes "were from 1990 and 1992, so they were 28 and 26 years old, respectively, when he committed the current offenses in 2018."  (*Id*. at p. 1141.)  The appellate court heavily downplayed the current offenses of attempted robbery and attempted extortion, which were repeatedly characterized as the mere squashing of oranges.  (E.g., *id*. at p. 1147 ["It bears repeating:  he squashed oranges and was sentenced to life"].)  But the "'overarching consideration'" was the fact that "given his age, his three strikes sentence coupled with the determinate term [meant he would] likely die in prison."  (*Id*. at p. 1144.)

Here, as previously discussed, the trial court's unwillingness to reduce defendant's sentence for felony evading did not foreclose his ability to be released from prison.  Defendant was already eligible for parole and remains eligible for parole.  The fact the *parole board* has twice deemed him unsuitable for release does not make the trial court's sentencing decision unconstitutional.

## DISPOSITION

The judgment is affirmed.


PEÑA, J.

WE CONCUR:


LEVY, Acting P. J.


DETJEN, J.

27.